Good morning. May it please the Court. I'm Martin Vogelbaum for Taj Williams. You speak right into the microphone. I'm sorry, Your Honor. This case essentially presents four problems. Mr. Williams was convicted after a jury trial of account of arson under the federal statute. I don't know why, but I'm not hearing you well. I'm sorry. Maybe the microphone should be louder, please. Is that any better? Thank you. Mr. Williams was convicted after a jury trial of arson as well as possession of unregistered Molotov cocktails. The main theory that was presented to the jury was it was a simple sort of identification or alternative suspect case. And yet the district court's instructions on the arson count introduced a number of theories of possible mental states that could apply depending on whether the jury found that this was a completed arson or an attempted arson. And it also introduced the concepts of... Is there any question that it was completed? I think that depends. It's an interesting question because the indictment here charged damage and destroy building and contents all conjunctively. And that was the way the jury was instructed. So I think that one issue that arises here actually is how we can know how the jury interpreted what a completed arson would be as opposed to an attempt. But it's a plain error question, isn't it? Because no objection was made. That's correct, Your Honor. Yeah. So that if, in fact, there was sufficient evidence that this was not an attempt but an actual and that there was intent, then it's rather hard for me to see how the standards for plain error are violated. Well, I can speak to that. My understanding is that this is not a situation like the simple omission of a single element from a jury instruction. Essentially what we're saying here is that there was both an attempt theory presented and a completed theory presented. Those two choices for the jury were complicated by the conjunction of damage and destroy building and contents because this was not a case in which the building burned to the ground or was unusable. Presumably some structures and fixtures within it, certainly some property within it were destroyed, but other things were only... I'm saying that it's difficult to know how the jury would interpret what it means to complete an arson where you have this sort of conjunctive charge. I'm asking how could a jury find... What part of completed arson would the jury find was not satisfying? Well, for example, if they thought a completed arson had to involve complete destruction of the building or complete destruction of the contents, clearly that wouldn't be present here. And yet there was sort of no parsing out of that for the jury. And this also sort of complicates the mens rea questions. That would be a different instructional problem, wouldn't it? That's not what's at issue here. No. I actually raise it only because I see it as complicating the jury instruction issue that we do have. It makes it more difficult for the jury to determine, first of all, whether we have an attempt or a completed. And then we have this issue of whether one can attempt a reckless crime, which this court has said in other cases... No. We've said that you can't. Right. The question is, given the jury instructions and given that the question is, though, a plain error one, whether this is something that is really raises questions of justice or not, given the whole fact situation. Well, I think the other complication situation that we have here, too, is that the jury also was instructed on aiding and abetting and willful causing theories, which I think under this court's precedents about attempt and recklessness, you know, pose essentially the same question. It's difficult to see how somebody can be, can purposefully invest oneself and identify with and hope for the success of and act towards the success of or cause somebody else to do something recklessly, to do a reckless crime. Could you address some of the problems with the sentence and particularly the fact that the district court took into account uncharged conduct, which I've not seen done at a sentence, and also that it spoke about the many, many felonious driving without a license, with the impression that these were, you know, dangerous issues rather than tickets not paid. That struck me as an interesting issue, and I'd like to hear more about it from both sides. Thank you, Your Honor. I appreciate that. I think it's a difficult issue, and I think it was probably a difficult issue for the district court, because there is this sort of split in the court's decisions about if we're trying to determine whether a defendant's prior conviction is similar to one of the sort of de minimis crimes in 4A.1.2C, there are cases that say, well, if the statute under which the person was convicted merely punishes a single kind of conduct, then all one does is, you know, it's a purely sort of legal analysis, applying the multifactor test in Morales, without sort of sweeping into all of the relevant conduct of which the person may not have been convicted. Conversely, there's the Morales case, which says that if they were convicted under a statute that criminalizes a broad swath of conduct, then the court is supposed to examine everything within that relevant conduct to determine whether the prior offense is categorically more serious than the listed offenses at 4A.1.2C, or whether they're similar. The problem is, is that the court hasn't really clearly identified what the unit of decision is. The decisions say that you're supposed to look at the statute under which the person was convicted. But if you look at the Sanders decision, which is the fair-beating decision, that was charged under the theft of services statute, and it's merely one subdivision of 11, I think. So it's odd to say that that is a narrow statute that criminalizes a single kind of conduct, and then to say, you know, in Morales, which is the harassment statute, which is similarly structured, or UBRO, which is a New Jersey shoplifting case, which is similarly structured, Morales comes out differently. The court says, well, this is all sorts of different conduct, and we have to look at all of it. But here it was possible to identify the specific statutory subdivision under which my client was convicted. You're saying this is sufficiently simple that we can review it essentially de novo and say that things were taken into account that ought not to have been? That's right, and I think it would be useful for district courts to have some guidance about, you know, what is it, what is the unit of decision that we're supposed to be applying these factors to? I went back and looked at the dockets in Morales and Sanders and so forth, and I wasn't able to find anything in the briefs about whether the difference was that the court could determine which subsection the person was convicted under or not. But here the district court knew which subsection it was, and yet took into account, as the court said, just a vast swath of behavior, which pops up again and again in its sentencing decision about how deceptive this conduct was, how elaborate it was, how it involved theft from an employer, which is then likened to another criminal trespass conviction that had some element of maybe trespassing to take property. And then on top of it, we have this sort of block in a narrow period of time of unauthorized operation convictions. Tell me, was this directly preserved? Did you specifically object to this material being taken into account? I was not the trial attorney, but, yes, the trial attorney did. And under the rubric of when you consider all of these things, you are inflating the seriousness of his criminal history. Right. Unlike the conviction issue, this is one which we have to look at directly, not under plain error. That's right. This is a matter, that's right, it was preserved. And as to the automobile offenses, this is a matter of the court sort of making assumptions about what they entailed, about whether or not my client was a dangerous driver, essentially, is what it comes down to. We've reserved two minutes for rebuttal. We'll hear from the government. Good morning. May it please the court, my name is Tiffany Lee, and I represent the United States. Before I begin to address Judge Calabresi's concern, I wanted to point out there is, unfortunately, an error in the government's brief. On page 14, during the recitation of the facts, I had written that Williams had presented several defense witnesses. That is incorrect. Williams only asked to recall an ATF agent, and then the defense rested. So that's at the top of page 14. To Judge Calabresi's point, there are two separate issues going on here. One is the application of 4A1.2C, and whether or not the district court engaged in the correct analysis to determine whether or not the crime to which Mr. Williams pled in state court was sufficiently similar to the listed offenses that are not counted. Which includes failure to say something to a policeman and so on. Exactly. It says false information to a police officer. Your Honor, my recollection of the pre-sentence report was that the conviction did not enumerate the extent of the New York penal law to which Mr. Williams pled guilty. And that is my recollection from just reading the pre-sentence report. I may be wrong, but regardless, this Court in Morales did set forth what it believed to be the analysis under those circumstances for this Court to determine the standard of review when it's looking at a district court's determination whether or not something is dissimilar from the not counted offenses in the guidelines. And here, the district court did engage step-by-step in the Morales analysis. It looked at the statute, the New York penal law provision, which had several Isn't there an odd question about whether it is simple enough so that it is something that we can review? As some cases have said. Or whether it involves facts, in which case the district court's analysis is the appropriate way and gets deference. Isn't that an issue? I think it is an issue, and I think, though, when the district court reviewed it, they did not have, you know, they basically said that I am going to follow what the parties have both cited, which is Morales. I understand what the Court is saying here. But it's interesting, because in preparing this, I was in the midst of doing a lot of categorical approach, defense work, in other situations, so it's somewhat reminiscent of that, right? You know... Correct. I think, though, what Morales suggests, though, is, as Judge Calabresi is suggesting, there are circumstances where, let's say, the statute only prohibits one type of behavior. So, for example, if the New York penal law only prohibited the false reporting to a police officer, then that's simple. That's simple enough, and in that case, the district court judge could be, oh, this is a match. This is, as a matter of law, this totally matches up with false information to a police officer. Here, we don't have that. The New York penal law provides for a variety of circumstances, and when the PSR listed the offense, it just said that provision of the penal law, to which Mr. Williams pled guilty. The district court judge would not know, well, was this because of a false reporting to a child care, you know, provider? She knew, however, that he was sentenced to less than a year and a day. Exactly. In which case, she would have to, it would, my recollection of the pre-sentence report says additional information to be provided by probation. Probation went to look for the underlying conduct, in which case now the judge will undergo that analysis as provided for under Morales. So we'll compare the two offenses. But opposing counsel said, in fact, in this case, there was one specific thing of which this man was convicted. That is, I understand what you're saying, but if in fact there was one specific thing under these various things in New York, then why isn't that enough to specify? Why do you need to do the rest? I think you still need to do the rest, because under the circumstances here, I don't believe that it was clear on the record which specific thing he was convicted of, absent all that information. And quite frankly, with that information, the way this, if you're just looking at statute to statute, you cannot make that analysis. You cannot make that as a matter of law, anytime someone pleads guilty to New York State penal law, whatever, that that is. I'm trying to figure out whether this fact of, let's call it simplicity, was not available to the district court and yet was there. Let's assume that for a moment, that it was not on the record there, but it can be shown to have been the case as a matter of law now. What does that tell us? Because the district court could, didn't make a bad mistake. It didn't make, according to what was before it, it did exactly what it should have. And yet we can say that this was not what they ought to have done. And I'm just trying to figure out what we do in a situation like that. I mean, is that like plain error review, because it wasn't called to the district court's attention, or are we to ignore the fact that it was simple? I'm a little bit at a loss, if you don't. I think under these circumstances, we employ the due deferential review here, because here, basically, it wasn't as simple. It wasn't a simple matter of Mr. Williams pled guilty to this. This wasn't the single conduct that he engaged in to lead him to that plea of guilty to this provision of the new P&L law. I think under the circumstances here, the district court set out carefully all the factors under Morales and is basically to provide you a basis of saying, this is how I'm exercising my discretion in following the roadmap that I believe, you know, the reviewing court has provided me under these circumstances, where I'm not sure, based on what I have, which factor, which provision of that New York State penal law he was convicted of. I notice, as Judge Calabresi was talking, I do see something in, I think, an objection to the New York, to, so this is a submission from the defense counsel below that said he received one point for 240.53B. Is that correct? And I'm just. I'm sorry. Oh, yeah, sure. Documents actually reflect that it was New York penal code 240.50. I'm not, of course, hearing anything. Oh, sorry, sorry. So there was reference to the 240.53B, the specific section below, but when it came time to the actual discussion of it, the district court did not, did not talk about that. Let me ask you something else. Suppose we found that the district court, just I'm not saying we can, overstated these convictions for driving without a license because it viewed them as being highly serious ones when they were not, and suppose that on that basis we wanted to send it back to the district court to reconsider the sentence. At that point, the question of whether this was simple or not could be put on the floor. Could it not? Certainly, were this court to send it back on an issue of sentencing, the government would. Were we? I'm not saying. Were you? Were you? I'm not saying we can do that, but. But to the point to your other concern about whether or not the district court overstressed the issues of the aggravated unlicensed operation of a motor vehicle, if you read through the district court's sentencing transcript, the district court carefully outlines each of the factors under 3553A. And it's only in the discussion of the criminal history where the court talks about, you know, basically it begins on the appendix at page 922. The court first talks about the personal characteristics of Mr. Williams and then proceeds, I considered your criminal history and the fact that, you know, there's a couple of things in your criminal history. And then talks about, you know, you had no criminal history until you were 26 years old and an adult. You were arrested between August 2011 and January 2015 on five different occasions. And the court does mention the convictions for unlicensed operation of a motor vehicle, but then, you know, just makes the point that, you know, I mean, in other words, there seemed to be no recognition of lawful authority. This is all fair comment. I believe that the district court in its discretion under 3553A is going to be doing. I don't think so, Your Honor. I don't think that's what she said. Yeah, exactly. That he kept doing it. Correct. And I think that's fair comment. I think in exercising its discretion to weigh all the sentencing factors under 3553A, as this court has said over and over, there's no magic, you know, incantation. There's no need to say why you're stressing one factor over another. And so here, that was part and parcel of her sentencing colloquy. As long as you tell us what you're doing. Exactly. She did. Exactly, Your Honor. So unless the court has any further questions, the government rests on its submissions. Thank you, counsel. Thank you. Mr. Vogelbaum, you have two minutes. Thank you. Actually, I don't know if the reference to 240.503B in the trial attorney's brief was a typo or what, but it's abundantly clear and it's in the appendix that the district court actually had the sentencing documents of what Mr. Williams was actually convicted of. And, in fact, it was 240.503A, which criminalizes exclusively the following. Gratuitously reporting to a law enforcement officer or agency the alleged occurrence of an offense or incident which did not, in fact, occur. Which sounds exactly like saying something falsely to a cop, which is one of the listed things. That's right. And I would give the court another example of sort of what the state of things invites. What we are seeing repeatedly now is we have a lot of clients with disorderly conduct convictions, which, you know, may involve underlying facts that don't necessarily fit into, you know, any of the sort of categories of New York's disorderly conduct statute or whatever. We are now seeing, for example, people who are being sentenced federally for a federal drug offense who have a disorderly conduct conviction. Probation goes out and finds that, you know, this disorderly conduct conviction in some way involved, you know, for example, like not being completely compliant or something during an investigation of, you know, a suspected drug deal. And then we get decisions that, in light of those facts, merely because the disorderly conduct statute in New York has, you know, several subsections, that the district court can look at those facts, conclude that it's similar, and assess points for it. And I think that that is, that kind of free-ranging fact-finding is really not what is contemplated, either by the guidelines, which prior offenses. Our situation is this. We defer enormously to the judgment of district courts in setting sentences. That's what we did and decided in Bank, in Caveira, and I wrote that opinion. And we do defer enormously. But because of that, we have to be particularly careful that the district court starts out with an appropriate set of things. That is, it is procedurally correct. And then from then on, it can do almost anything it wants within whatever range. And that's why I'm pressing on this thing, because it is this funny business where the district court does get almost always the last say, but we have to be able to be sure that it starts from the right point. So I think that's easily separable in this case. The guidelines not only, we don't just have to look at 4A1.2C. If you look at 4A1.2A, prior offense, or the offense for that section of the guidelines, is essentially defined as conduct of which in some way you've been adjudicated guilty. So if the district court knows precisely what, you know, by virtue of the statutory subsection, you've been adjudicated guilty of, it's, you know, not just a matter of the ultimate substantive reasonableness of the sentence. It's a procedural error, I think, under Sanders than to go about, you know, imagining other things that you might have done that a judge never found that you did. It's almost a shepherd kind of problem. And here I think you can get to the reasonableness, understanding that it's pretty capacious, because in the case of the motor vehicle stuff, it's true that the court said this is compressed and demonstrates a disrespect for authority. But it also said, you know, and people without licenses, you know, are dangerous, and it's just, you know, a wonder that nobody got hurt. Those are facts that are just not substantiated by the record. So here you have a sentence where these factors were clearly influential, and there are underlying procedural errors as to both of them. Thank you. Thank you. Thank you both. We'll reserve decision. Yes, you've been both very helpful.